NOT DESIGNATED FOR PUBLICATION

Nos. 120,581
120,582

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ROBERT D. BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed January 31, 2020. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Robert D. Brown appeals the district court's decision revoking his probation and ordering him to serve a modified prison sentence. The district court bypassed the imposition of an intermediate sanction by finding that imposing such a sanction would jeopardize public safety or would not serve Brown's welfare. On appeal, Brown claims the district court erred by failing to state with sufficient particularity why continuing his probation would jeopardize public safety or would not serve his own welfare. We disagree with Brown's claim and affirm the district court's judgment.

1

FACTS

On January 30, 2017, Brown pled guilty to one count of aggravated burglary in 16CR2270 and one count of felony criminal threat in 16CR2497. On March 7, 2017, the district court sentenced Brown to 172 months' imprisonment in 16CR2270 and to 17 months' imprisonment in 16CR2497 and ordered that the sentences be served consecutively. The district court granted a dispositional departure in each case and placed Brown on probation to be supervised by community corrections.

Less than one month after sentencing, the State filed a probation violation warrant in each case alleging that Brown had violated his probation on many grounds, including failing to provide verification of his job search, missing multiple drug and alcohol treatment sessions, and testing positive for marijuana and PCP. At a hearing on April 20, 2017, Brown admitted the probation violations and the district court revoked Brown's probation and ordered him to serve his original sentences. The district court bypassed the imposition of an intermediate sanction by finding that imposing such a sanction would jeopardize public safety or would not serve Brown's welfare. The district court explained its decision to revoke this way:

> "'Essentially, for this particular defendant, given his criminal history, using PCP is beyond what the Court—what the legislature considered and puts the defendant at risk and puts the public at risk.
> "'All right. So with that being said, number one, the Court agrees with [the State] that given the defendant's criminal history, given the nature of the crimes in this case, given the probation violations with the use of PCP, independently of the plea agreement, that the safety of the members of the public will be jeopardized or the welfare of the defendant would not otherwise be served by keeping him on probation.'" *State v. Brown*, No. 117,794, 2018 WL 4039194, at \*2 (Kan. App. 2018) (unpublished opinion).

2

Brown appealed, and a panel of this court held that the district court had not made the statutorily required "particularized findings" to bypass intermediate sanctions under K.S.A. 2017 Supp. 22-3716(c)(9)(A). 2018 WL 4039194, at *2. This court held:

> "The district court found that Brown had used PCP—he admitted testing positive for the drug and didn't dispute the test results. But that alone didn't explain with particularity why an intermediate sanction would impinge on public safety or fail to serve Brown's welfare. The district court's generic references to Brown's criminal history and the 'nature' of his convictions in these cases don't add any specificity. As they stand, those comments could be made in virtually any revocation hearing. The district court said nothing about what in particular in Brown's criminal history or in the circumstances of the aggravated burglary or the criminal threat justified a bypass of an otherwise mandated intermediate sanction. The district court's failure to do so amounts to a deviation from the appropriate legal framework and, thus, an abuse of discretion. This error requires a remand to the district court." 2018 WL 4039194, at *2.

At the remand hearing on October 30, 2018, the parties argued about whether the district court could revoke Brown's probation without imposing an intermediate sanction under K.S.A. 2018 Supp. 22-3716(c)(9)(B) because the probation was originally granted as the result of a dispositional departure, but the district court declined to rely on that statutory ground to revoke Brown's probation. Instead, the district court sought to make the required particularized findings to bypass the imposition of an intermediate sanction under K.S.A. 2018 Supp. 22-3716(c)(9)(A). The district court stated:

> "But the Court notes with particularity some of the additional factors in this case. Number one, the crimes of conviction were pure person felonies. The burglary was of a home. The defendant forced his way into a home where children were present. The State dropped the charge of assault against a 12 year old as part of the plea agreement. The defendant has an extensive criminal history from 1981 through 2017. He's got—in just looking at some of his person crimes, he has a burglary in 1981, battery of a law enforcement officer in 1984 and 1986, battery in 1987, domestic violence batteries in 1994 and 1995, committed second degree murder in 1994, domestic violence battery

3

2009, convicted of a drug paraphernalia charge in 2013, escape from custody in 2014. So his criminal past includes both convictions for violence and convictions for drug convictions, drug violations.

"Number five, if you look at his criminal history, when you look at that it shows the defendant's had a chance at probation in the past, and he's had the chance of being subject to terms and conditions, something not new to him. Number six, the court notes that the allegations on the probation violations were all within the first 30 days the defendant was placed on probation. Number seven, the point is not just that he violated his probation with six allegations or seven allegations in the first 30 days, it's that his criminal past and the crimes of conviction in this case indicate that the defendant has a tendency to violence and taking actions that lead to violent consequences.

"In number eight, taking drugs like PCP, and that was the reason I asked about what's dangerous about PCP, is drugs like PCP do not reduce violent tendencies in this Court's experience. Number nine, he was failing because of the significance of the recommendation on the—that he go and get his drug treatment. He was failing to address the fundamental issue regarding his drug treatment not once but four times in the first 30 days, and it demonstrates a failure of fundamental unwillingness to comply with probation, and it demonstrates a significant risk of continuing to do drugs and commit violent crimes.

"Next, he recognized and acknowledged this potential, this risk of the behavior by entering into a plea agreement where he stipulated to violations that would include skipping the intermediate sanctions. The plea agreement is just his acknowledgement that—his recognition and acknowledgment that he was high risk of not just violating his probation, but in such a way that he would be a danger to the community and that his welfare wouldn't be served by staying on probation.

"Next, if you started on probation and you slip up a few months into it by missing a treatment or testing positive in some fashion, that's one thing. It happens, and the Court recognizes that in my experience slipping up happens. But with a criminal history and a criminal background like the defendant's, if in the first 30 days you test positive for PCP and marijuana, it's not just marijuana, it's not just testing positive for alcohol, it's PCP. If you miss four drug treatments it demonstrates to the Court that you're not getting it.

"So with that in mind it wouldn't be in his best interests and welfare to continue on probation if he wasn't getting it in that time that he was committing the probation violations. In addition, with the defendant's criminal background, given all the person

4

crimes and all the nature of the crimes that he's had and it has continued, if he can't comply within the first 30 days you're at—you're creating a significant risk for public safety and welfare.

. . . [T]he Court finds that keeping the defendant on probation poses a risk to the public safety and welfare. In addition, the Court continues to find that the defendant's welfare would not be served by continuing to keep the defendant on probation, and so the Court revokes the defendant's probation and directs that he serve his sentence."

After making its findings, the district court asked whether there were "[a]ny additional findings that either side wants me to make with particularity?" Brown's counsel did not ask the district court to make any more particularized findings, but he merely asked if he could argue for a modification of Brown's sentence. The district court granted the request and modified the aggravated burglary sentence to 154 months' imprisonment and the criminal threat sentence to 15 months' imprisonment, to be served consecutively, for a total sentence of 169 months' imprisonment. Brown timely appealed.

ANALYSIS

On appeal, Brown argues that the district court failed to make particularized findings in order to bypass the imposition of an intermediate sanction under K.S.A. 2018 Supp. 22-3716(c)(9)(A). But before we reach the merits of this argument, we pause to note that it is questionable whether Brown's argument is properly before this court. Brown asserts that he sufficiently preserved his argument for appeal when he "requested the court sanction [him] according to the graduated sanctions for technical probation violations." But Brown does not acknowledge that the district court asked whether the parties wanted additional or more particular findings, and Brown did not inform the court that he wanted more particular findings or that he believed the findings already made were insufficient. Yet that is exactly what he now argues on appeal.

5

Under the invited error doctrine, "'a litigant who invites and leads a trial court into error will not be heard on appeal to complain of that action.'" *State v. Fleming*, 308 Kan. 689, 696, 423 P.3d 506 (2018). Here, the district court offered Brown the opportunity to request more particularized findings, and Brown chose not to do so. By this decision, Brown may have invited any error in the sufficiency of the findings. That said, we will not rely on the invited error doctrine to dispose of Brown's arguments in this appeal.

Even examining the merits of Brown's arguments, we find that he receives no relief. K.S.A. 2018 Supp. 22-3716 generally provides that once a defendant has violated the conditions of probation, the district court must apply graduated intermediate sanctions before the court can revoke probation and order the defendant to serve the underlying sentence. See K.S.A. 2018 Supp. 22-3716(c)(1)(A)-(D). But under K.S.A. 2018 Supp. 22-3716(c)(9)(A), the district court may revoke an offender's probation without having previously imposed an intermediate sanction if the "court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." Whether the district court sufficiently particularizes its reasons, as required by statute, is a question of law over which this court has unlimited review. *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015).

Brown argues that the district court's findings were not sufficiently particularized and, rather, "the district court essentially offered two rationales for revoking Mr. Brown's probation: his criminal history, and the fact that he was . . . not amenable to probation." Brown contends that the district court merely noted his extensive criminal history and "never explain[ed] how the public safety or Mr. Brown's welfare would be furthered by incarceration instead of probation."

Brown has oversimplified the district court's findings. The district court began by summarizing the violent nature of Brown's criminal history and his current crimes of

conviction. But the district court focused on the fact that Brown committed seven probation violations in less than a month after being placed on probation by not attending treatment and by testing positive for PCP. The court found that the fact that Brown's violations occurred within the first 30 days of his probation "demonstrate[d] a significant risk of continuing to do drugs and commit violent crimes." The district court found that based on Brown's history of crimes of violence, keeping him on probation would create a public safety risk because he was using PCP, a drug that does not reduce violent tendencies, and because he was failing to attend treatment to address his drug problem. The district court also found that because Brown's violations occurred within the first 30 days of being placed on probation, further probation would not serve his welfare because he had a "fundamental unwillingness to comply with [the terms of his] probation."

Thus, the district court did not revoke Brown's probation based only on his criminal history and the violent nature of his crimes. Instead, the district court relied mainly on the fact that Brown committed seven probation violations within the first 30 days of his probation, and the district court connected that reason with its public safety and offender welfare findings. In other words, the district court *explained how* the safety of members of the public would be jeopardized if Brown remained on probation and the court *explained why* Brown's welfare would not be served by imposition of an intermediate sanction. See *McFeeters*, 52 Kan. App. 2d at 49. As a result, we conclude the district court's explanation of its decision to revoke probation rather than to impose intermediate sanctions was sufficiently particularized to satisfy the requirements of K.S.A. 2018 Supp. 22-3716(c)(9)(A).

Affirmed.